If I can just briefly and very respectfully clarify, when you say we, you're using that as just the court. Yeah, oh yeah, I'm talking about myself. I'm the presiding judge, so this is not necessarily everybody's viewpoint. When I say we, it's because you are appearing in front of us. Understood. Go ahead. Thank you, Your Honor, and may it please the court. From 2010 to 2012, HHS conducted administrative proceedings to determine the propriety of a report made by a hospital against Dr. Doe. Between 2016 and 2019, and in fact continuing into 2022 and 2023, Doe discovered evidence that the hospital made intentional misstatements during those administrative proceedings. After Doe's efforts at judicial review proved unsuccessful, he petitioned HHS to reconsider its 2012 decision based on that new evidence. HHS summarily denied Doe's petition, and it is that governmental action that is the subject of his complaint and that we are now up on appeal. As relevant here, Doe brought an APA claim and an as-applied due process claim, arguing that HHS's summary rejection of his petition was arbitrary and capricious and that it was fundamentally unfair in violation of due process. The district court dismissed both claims and reversibly erred in doing so. I want to focus first on the APA claim. The district court reversibly erred as to that claim when it looked to what evidence was available during the District of Columbia litigation rather than what was before the agency in its jurisdictional analysis. I think the main case here is Brotherhood of Locomotive Engineers, which makes clear that district courts may review agency denials of reconsideration petitions so long as those petitions are based on either new evidence or changed circumstances as compared to the original agency record. And I'll go into detail a bit later about what that evidence is. Second, the district court reversibly erred when it barred Doe's as-applied due process claim through res judicata. Res judicata, of course, can only bar claims that couldn't have arisen in the prior litigation. And here, the challenge is to a distinct governmental action, which is the denial of reconsideration, not the initial decision in 2012 not to void the adverse action report. By necessity, res judicata cannot bar Doe's as-applied challenge to a governmental action that had not yet occurred at the conclusion of the District of Columbia litigation. I'd like to go focus first on the APA claim. To start, there's a strong presumption of judicial review under the APA. Now, Section 702 of the APA carves out a narrow exception for that for matters committed to the agency by law. And so, as Justice Scalia explained in BLE, when an agency denies a petition for reconsideration based on material error, in other words, the very same record that was already before the agency, essentially, the original petition and the petition for reconsideration depend on the exact same record, and the judicial function would be duplicated. But when an agency denies a petition for reconsideration based on new evidence, that denial is subject to judicial review, because otherwise, and to quote BLE, a petitioner will have been deprived of all opportunity for judicial consideration of that new evidence. And so the question becomes, well, what does new evidence mean within the meaning of BLE? And it simply means that it wasn't available during the agency proceeding, and that it is proof that tends to make a fact material to a proceeding more than less likely to be true. And you can look at Federal Rule of Evidence 401, for example, of what relevant evidence would mean. And so I want to focus on three pieces of crucial new evidence that Dr. Doe alleged in his complaint that he says he found during the New York litigation between 2016 and 2019 that was not available at the conclusion of the agency proceedings in 2012. So first, Dr. Doe was not suspended by the hospital. In depositions and state actions, hospital administrators testified that reports of his suspension were erroneous and never corrected. And that's at pages 42 and 62 of the record. Second, the hospital admitted on appeal in the New York litigation that there's no question of fact that there was no adverse or corrective action being contemplated when Doe resigned. And that's critical because it goes to the heart of whether there was an investigation in the first place and whether the action was reportable at all. And third, the hospital never concluded that there were departures from the standard of care. The hospital's quality assurance review did not determine whether or not Dr. Doe departed from the standard of care. And that's at pages 65 through 66 of the record. And, again, if you don't know the answer, you can file a supplemental brief. But I'm just a little confused about how long it has been since this began and how many other places Doe has gone and how that gets him here. Sure. So maybe I can give a time frame. So the hospital submits the adverse action report to the agency in 2009. Doe begins his challenge in 2010. It takes two years for the agency to decide that. And so it's, I think, around the middle of 2012 that it decides not to void the adverse action report. Now, separately, he files a lawsuit I think a couple months before that decision in 2012 against the hospital in state court in New York, sort of basic facts, but breach of bylaws, fraud, breach of contract, different types of claims against the hospital relating to its treatment of him throughout that whole ordeal. And it's those proceedings through which he gathered this new evidence, which, you know, it was hard-fought litigation. I think the state court record in that case or even the docket sheet is hundreds of pages long. It was hotly contested. There were, I think, 17 depositions, 7,000 pages of new evidence gathered from 2016 to 2019 in those proceedings. So while that's happening, there's also litigation in the District of Columbia challenging the initial decision. And then what brought you here? Right. So, well, so the decision came down from the district. It took the district court a while through no fault of Dr. Doe. He had a ‑‑ there was a remand to the agency in 2015. It came back up. It was fully briefed in 2017. The district court didn't fully and finally resolve those claims until 2020. So it's litigation that started around 2012, 2013 that didn't wrap up until 2020 in the district court. Then he pursued appellate remedies, and, you know, that didn't conclude until 2023. Now, as soon as he received a denial of certiorari, he moved within a couple months to seek reconsideration in front of the agency. So I think where the district court and my friend on the other side are, you know, sort of focused is, well, could Dr. Doe have brought this evidence sooner, right? I think that that's the question. Well, and I'll let you speak to that, but I'm also trying to understand how you went to the Eastern District of Texas instead of New York or D.C. So that's where he lives. And so ‑‑ and I looked into the venue question. No one raised a dispute, at least the government didn't raise a dispute at the venue. Well, I'm not saying it's disputable. I'm just trying ‑‑ it just is a little bit unusual to me. That's just all I'm asking. Sure. I think it's just a function of where he was residing. Okay. Well, now you can speak to the timing. Sure. So he ‑‑ so I think the ‑‑ first of all, just to emphasize, the question under BLE is what was available during the original agency proceeding. And I don't think anyone can say that he should have gathered all this evidence from the hospital by 2012 because, you know, litigation just takes a long time, and it took a long time to get through these depositions to get the kind of material, important evidence that would actually support a request for reconsideration. And so, again, I think his process, and, again, some of this was him proceeding pro se, so I think, you know, you have to give a little bit of understanding of he's trying to make the best decisions he can in a kind of complex administrative environment. But as soon as certiorari is denied and that case is over, within a couple months he's asking the agency for reconsideration. And once that request is denied, he moves pretty promptly to file this lawsuit. And this lawsuit is about the agency's failure to not just reconsider, to look at the evidence and reconsider, but to just tell him you've exhausted your administrative remedies, you don't get any additional review at all, which is a big part of the problem here. The agency didn't look, say, we've looked at your evidence, we've thought about it, we don't think that it rises to the level that can undermine our initial decision. The agency just said, you know, after review of the information available, you've exhausted your administrative remedies and, you know, you have no further recourse with the agency. So that really isn't a sufficient reason under State Farm to justify what the agency did. I think the point of our due process and APA claims is that, at a minimum, the agency needs to look at this evidence and decide for itself whether it would justify reconsideration. And then from there, once there's actually a proper administrative record, the district court can evaluate that and, you know, make a decision as to whether it was arbitrary or capricious not to void the adverse action report. But we're kind of several steps away from that. The district court only ruled on jurisdiction. It didn't rule on the merits. And some of the cases that we cite in our brief, like Village of Barrington, show that there's a really important difference between jurisdiction and the merits. So evidence might be sufficient to establish jurisdiction, but not enough to show arbitrary and capriciousness. Now, we do think that the evidence shows arbitrary and capriciousness, but certainly at this stage, when you look at the facts and the complaint pleaded as true, Dr. Doe has done more than enough to allege that there is new evidence that could potentially show that the agency erred. And that's really all we're looking at. And what's he been doing in the meantime since 2009? So that's a fair question. We asked that before this argument, Your Honor. He has practiced as a doctor in some capacity in the U.K. He also has practiced at times, but not with the kind of caseload that would be required to keep up his skills to a level that he would have been without this report. And he's struggled candidly at times to find employment, which is what he alleges in the complaint, that the maintenance of this AER and then the refusal to reconsider has just had a devastating consequence on his career, which is why he's pursuing all avenues within the administrative proceedings that are allowed by law to challenge it. And I don't think there's sort of an insinuation in the report and recommendation and my friend on the other side's brief that he's been dilatory. And I think it's been the exact opposite. This matters a great deal to him. And so he's pursued every possible means that he can to try to seek redress. I want to turn, if I could, to the due process claim. So that's count three of the complaint, which we think is best understood as a procedural due process challenge to the denial of reconsideration. You can see that at paragraphs three, 549, 562 of the complaint, where he makes clear that what he's challenging is the denial of reconsideration and the fact that the agency did not provide any process and did not provide any reasoning into its denial. And so at a minimum there, again, we're asking for the court just to remand to determine what kind of process is owed. Finally, I just want to emphasize one thing about kind of the interesting procedural posture that we're here on. We're here on a motion to dismiss that only argued res judicata. I mean, that was the only basis. It was an issue presented in that brief. It was just should these claims be dismissed on res judicata. The magistrate judge recognized that as to count four, which is the APA claim, dismissal would clearly be improper. But then, you know, appropriately, the district court considered jurisdiction under BLE. But it's, you know, issues kind of of timing, Your Honor. Judge Haynes going to, like, limitations, laches, those sorts of, you know, arguments sounding in that vein were just never raised. And so it couldn't really be a basis for affirmance. I think the only basis to affirm would be res judicata. And, again, as to the APA claim, the district court acknowledged that that was clearly incorrect. So we're asking for, you know, the remedy of reversing as to count three and count four and allowing the district court to consider those claims as not jurisdictionally barred or barred by res judicata in the first instance. If there are no further questions. Do we have a question? Okay. Thank you. We appreciate you doing this. Thank you. You did a good job. Thank you. And you will have a rebuttal. All right. Adrian Garcia for the HHS. May it please the court. Adrian Garcia for the United States Department of Health and Human Services. I want to start off with just commenting on something that Mr. Abrams mentioned about whether we would characterize Dr. Doe's actions as dilatory. That would not be the term I would use. Dr. Doe has been actively litigating this case since the underlying event occurred in October of 2009. Over that time, he has, over a decade, now closer to two decades, been actively litigating this at both the administrative level, the state court level, across three district courts, before the D.C. Circuit Court of Appeals, and even reaching the Supreme Court of the United States. Unwilling to accept the adverse result, understandably so, he is now engaged in what is clearly forum shopping and seeking to relitigate the issues, the underlying legal issues, that have already been rejected by multiple courts across the country. So how is he doing that? He's trying to get his foot in the door through an exception that just doesn't apply, the new evidence exception. Mr. Abrams mentioned that, yes, denial of reconsideration is typically committed to agency discretion by law. There is no review. There has been a judicially crafted exception that is articulated in Brotherhood of Locomotive Engineers, BLE. And in that case, Judge Scalia did say, did explain, after looking at the different cases considering reconsideration, that the cases that allowed for judicial review, a jurisdictional question of whether it could review this agency action, sought reopening on the basis of new evidence or changed circumstances. It also, in explaining why there should be a difference between challenges based on material error and challenges based on new evidence, it explained that the reason for it is because it would be unfair to deprive a petitioner of judicial review if the new evidence or changed circumstances was not available in the original proceeding through no fault of his own. But I will proffer that, in that opinion, if you read it, the only time that original proceeding appears in that opinion is in the dictum of the case. It is in Scalia's explanation about the case overview. If you look at the actual holding of BLE, it doesn't mention original proceeding. And it would make sense why it would be relative to the original proceeding, because typically when somebody does seek agency review, it is limited to the original proceeding. But this isn't a typical case, as both parties have spelled out for the court, and so has the magistrate judge and the district court below. Here, we're talking about a 15, 16-year-long process, where the agency was not only actively litigating with Dr. Doe, but there was even a remand in 2015. There was even an offer from the secretary to consider the evidence that he now claims is at issue. And through Doe's fault, that was not actually submitted by his own choice. And he references this in his complaint. It is part of the record. There's an argument that is put forward that the district court and the magistrate judge erred in considering facts outside of the complaint. But, Your Honors, we're talking about a 130-page complaint that incorporates by reference specifically all of these different proceedings, including public filings, including the New York brief that Dr. Doe alleges is a new evidence. So the actual basis and what the court considers is not as narrow as Dr. Doe articulates in his brief. But more importantly, it is true. We are here at a jurisdictional question. BLE determines whether a district court could review an agency's denial. It doesn't stand for the proposition that if there is new evidence, an agency must reconsider. It is only the jurisdictional issue. Okay, I'm well aware of some jurisdictional issues, but what about the due process? Sure. Well, first, Your Honor, I believe the court correctly interpreted Doe's third cause of action. That third cause of action spans nearly 40 pages from page 144 in the record to page 181 and spans close to 160 paragraphs. And in that, there is a single paragraph that mentions the agency's decision not to review. And even that paragraph focuses on a lack of notice and hearing procedures as well as the Secretary's failure to not void the AAR. So it is actually so bereft of any sort of reference to this motion to reconsider that in Appellate Counsel's brief, he actually cites a paragraph in the fourth cause of action to try to give meaning to the third cause of action. And Mr. Abrams actually just referenced that paragraph, paragraph 556, which is outside of the third cause of action. And it's true. He was proceeding pro se, and pro se pleadings are liberally construed. But, Your Honors, there are limits, and it has to be a reasonable interpretation. It has to be realistic. And I argue on behalf of the agency that the interpretation that is now being adopted for purposes of appeal is not how that count should be read. It is a due process challenge on the act itself. It is a due process on the maintenance of the AAR, and Dr. Doe's claimed injury as a result of that. So you think it is race due to Cotter? It is. I believe it is. And what's your best statement on that? The cause of action focuses on the maintenance of the AAR. The maintenance of the AAR is not an issue that is being caused by the denial to reconsider by the agency. That is a function of the underlying act of which has been decided regarding the reportability of the AAR and whether the report itself is accurate. If this challenge is so limited to just the motion to the failure to reconsider it, then, Your Honor, now we are in the, there's a question as to whether this is even coercive action by the government that would rise to the level of a due process violation. Because agency inaction is widely held to not be the type of affirmative action that could sustain a due process violation. And there is some challenges in the reply brief regarding kind of raising this for the first time on appeal. I'll just respond to that, that this actual interpretation of the third cause of action, it's also being raised for the first time on appeal by appellant. The magistrate's opinion clearly interpreted the third cause of action as being a challenge on the act itself. And there was no objection from Dr. Doe regarding this interpretation. There was no challenge on that basis. So the first time that this is happening is on appeal. And while it's true that Doe cites a case, North Alamo Water Supply, for the proposition that something that's raised for the first time on appeal should not be considered absent extraordinary circumstances. But that same case states that extraordinary circumstances include issues that are more pure questions of law and where a miscarriage of justice would result, which is the case here. It would be a pure question of law whether a denial of reconsideration can serve as the basis for a due process violation. In addition, there are Fifth Circuit precedents that state that the court can affirm the district court's judgment on any ground supported by the record, and I argue that that is supported in this case as well. Okay. But your opponent said, and I'm not saying we will find a lack of res judicata, but we'll just say what if we did, then is there something we should do besides remanding or what? If there is no res judicata, I still think that it can be found based on, that there could be a finding that is reached on the record itself regarding whether it would apply. And I would urge the court to do that. As far as whether it could be remanded on the issue, it's just, it's being characterized as a very narrow issue. But even in the arguments by Mr. Abrams, it's clear that the underlying issue is the voiding the AAR. And that, Your Honor, is just a thing that is separate and apart from the denial of reconsideration. So it isn't, I would disagree that it is as narrow as they are claiming. And you think we shouldn't be remanding because this has been going on for long enough or something? Is that a fair statement on your part or what? Yes, Your Honor. I think that this isn't a typical case and the way that new evidence and original proceedings are being read are not consistent with BLE and the case law that interprets it. And so I would say that there has to be some finality. Under the interpretation that Dr. Doe advances, any sort of newly generated evidence regarding old facts, facts that have already been considered and have already been argued, could consistently require dragging an agency into court for review. And I appreciate that as far as this action. But I guess I'm wondering, it's been so long since what he allegedly did wrong back in 2009. Why haven't you all been able to work something out with him? Because we all need doctors. I'm not saying I personally want this doctor, but just saying, in general, doctors are needed. And if he's been working since and doing a good job in other places and other things, why wouldn't that sort of bring him back, even if he messed up in 2009? Why hasn't he gotten better and you all can work something out? Your Honor, I think that the best answer to that is that that's really left to the discretion of the agency, the actual underlying decision to, you know, maintain. Oh, I know that's not our choice. I just, maybe I shouldn't be asking it. It does seem like it's been a really long time, which is in your favor, but it's also kind of in his favor that it's been so long. It's true. And I will just say that I think it harkens back to the purpose of the HCQIA itself, right? It's Congress's effort to provide certain information in the name of patient safety and to provide this information so that, you know, so that hiring, so that hospitals, doctors, peer review is informed by events that did happen. And if the court, if Your Honors would take judicial notice of the actual AAR in question, it describes the occurrence in what should be a very neutral manner that just describes the facts. And it includes certain statements from Dr. Doe regarding his position. And it has been verified for accuracy, persistent, I mean, consistent with the prior challenges that have occurred in different forums. And so I think kind of outside the scope of that, it isn't, the database itself isn't supposed to be some sort of punitive measure. It's supposed to provide information. It's all in the name of patient safety. Okay. So you're saying that there are entities that could feel like that was long enough ago that it isn't worth considering in deciding whether to use him for something. Of course. And that is the aim of the database. And this was an issue that was fleshed out a little bit more in the Doe 1 and Doe 2 cases for the D.C. District Court. Okay. And I just, before, unless you all have any other questions, before I wrap up, I just want to really point the Court to two decisions that I think are very instructive and have been cited by the lower courts and by both parties. And that is the Berry decision out of the Sixth Circuit and the Smalls v. Spencer decision out of the D.C. District Court. And in both of those cases, even though that this is a, that in both of those cases, the courts were examining the issue at a jurisdictional level and determining whether the reconsideration request sought reopening on the basis of new evidence, not on whether there is new evidence or not, whether the request itself is being sought on the basis of new evidence. And in order to do that threshold inquiry, even at a jurisdictional level, it required the courts to actually look at the evidence and see whether it had been previously submitted to the agency, whether it consisted of new facts, which through no fault of the petition or the original proceeding did not contain. And in the case of Smalls v. Spencer, the actual evidence that was considered and the findings in that court are very similar to what we have here. In Smalls v. Spencer, we were, we, the court considered newly generated testimonials, new letters from doctors that had previously submitted letters. And the court in a jurisdictional consideration stated that no, in no meaningful sense, this is new evidence. And it rejected evidence about psychological conditions that were not material to the decision. And this is all in the jurisdictional context. And as far as the case that Dr. Doe cites to kind of distinguish this in his support, it's the village of, I'm sorry, it's the D.C. Circuit's village decision. And that had to do, that decision itself, I just want to say that it's distinguishable. There, the court, the D.C. Circuit made a comment that a 2011 traffic study would not have been available in 2008 when an agent, when the agency made its decision. So whether this is, whether this new evidence is material or not, that is a jurisdictional question, not a merits question. I'll just point the court to the following paragraphs after that assertion in which then the circuit court actually examined the evidence and stated that to the extent that the purported new evidence was really an argument that the agency improperly weighed the significance of the traffic and the significance of that 2011 study when it first reached its decision, that that itself was a material error argument, and that itself was not reviewable. So it isn't the case that there is new evidence, you can get your foot in the door, it's opened, now you can review everything. Even in that case, the court stressed the importance of being able to distinguish between whether it's being based on new evidence or whether it's being material, based on just relitigation of material error, which is the case here. All of the new evidence that Dr. Doe proffers here is all to relitigate what constitutes an investigation. It has nothing to do with the evidence itself. And what constitutes an investigation was a legal question that was ultimately decided on statutory interpretation grounds by the D.C. District Court, by the D.C. Circuit, and ultimately being denied by the Supreme Court. Any questions, y'all? Okay, thank you very much. We appreciate your argument, and we now will hear from Mr. Abrams. Thank you, Judge Haynes. So in any case of reconsideration, there's always going to be some implication of looking at what originally happened, but we agree the initial decision and the reconsideration are two distinct actions, and what we're here challenging is the reconsideration, not the initial decision. I just want to go through several of the points that my friend on the other side raised. First of all, forum shopping wasn't raised below in the motion to dismiss or really at any stage of the case and isn't a basis for affirmance. I think the Village of Barrington case is particularly instructive because there the court actually did say there was jurisdiction and then from there said, well, it doesn't meet the high bar for showing arbitrary and capriciousness, but that firstholding is critical because what we're saying is that there is jurisdiction and that it's appropriate for the district court rather than this court to consider that evidence in the first instance, especially because that evidence was never even entered into the record. I mean, the district court would need to see the 7,000-page record or at least the relevant parts of it before making a decision. As far as the due process question and whether reconsideration is a governmental action, I think that has to be remanded in the first instance, if you agree with our characterization of the complaint, which I think, again, we cited the paragraphs in our reply and in our opening of where he says denial of reconsideration violated due process. That's a tricky issue that hasn't been briefed in this court except for maybe one paragraph in their brief and one paragraph in our reply, and I think the appropriate thing there is to remand that issue in the first instance and they can raise that anew. I do just want to focus on the specific new evidence and maybe just highlight that one more time because this isn't just new evidence that sort of incidentally bears on the original agency record. I mean, a statement that the hospital admitted that there was no adverse or corrective action being contemplated when Doe resigned, and that's at 120 of the record, and that they made that statement for dismissal of the claims that Doe brought against the hospital, I mean, that goes to the core of whether this report was properly entered into the data bank in the first instance, and it was not evidence that was available for the agency when it decided this issue in 2012. And again, I think this is a question that's appropriate for the district court to resolve in the first instance rather than for this court to wade through the complaint. Again, I think his complaint very clearly at various different paragraphs says this is about the denial of reconsideration, and when you interpret the pro se complaint liberally, give them sort of all appropriate inferences, and then in combination with what we said here, I think it's very clear that those are the claims that are being pursued now. And so if there are no further questions, we'd ask that the court reverse and allow these claims to proceed on the merits. Okay. Thank you to both sides. You both did a good job. And I really do hope that your colleague gets well very soon, and if he listens to this on audio and has any comments, we will accept a supplemental brief, and of course your opponent can respond to that supplemental brief if it's filed. Thank you, Your Honor. Okay. Thank you. And this case is now under submission. And we have now concluded this panel's hearing.